# FLYNN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

189 STATE STREET
SIXTH FLOOR
BOSTON, MASSACHUSETTS 02109
TELEPHONE (617)722-8253
FACSIMILE (617)722-8254
E-MAIL: flynnlaw@flynnassoc.com

R E C E I V E D

DEC 04 2003

CHAMBERS JOAN G. MARGOLIS
U. S. MAGISTRATE JUDGE

MICHAEL B. FLYNN*
RICHARD A. DAVIDSON, JR.
LORI A. MCCARTHY*
JOHN E. YOUNG, IV
WILLIAM ROA

OF COUNSEL:
DURKIN, MCDONNELL, CLIFTON,
& O'DONNELL

NEW HAVEN, CONNECTICUT
645 GRISWOLD STREET
SUITE 3253
DETROIT, MICHIGAN 48226
TELEPHONE (313)963-3033
FACSIMILE (313)963-3011

*also admitted in NY
*also admitted in CT

December 3, 2003

***Via Overnight Delivery***
The Honorable Joan G. Margolis
United States Magistrate Judge
United States District Court
141 Church Street
New Haven, CT 06510

RE:     FELA Hearing Loss Cases

Dear Judge Margolis:

Please be advised that I received a copy of Attorney Perry's correspondence to you dated November 26, 2003 on Monday, December 1, 2003, and I am writing in order to address the same.

On November 26, 2003, in connection with the production of documents by the keeper of records for J. Cameron Kirchner, M.D., an unidentified group of plaintiffs submitted, via counsel's letter, 14 letters authored by George Cahill, Esq. evidently addressed to the 14 unidentified plaintiffs as "Appendix A." Neither the letters, nor the identity of the plaintiffs, were sent to the defendants' counsel, as indicated in the correspondence. However, these letters were submitted to the Court, and the unidentified plaintiffs have requested an *in camera* review of the same.

Preliminarily, on September 16, 2003, the Court denied the hearing loss plaintiffs' *Motion to Quash Subpoena and for Protective Order*. Contained within the Court's *Order* was the suggestion that the defendants withdraw the subpoenas previously served upon Dr. Kirchner in connection with the hearing loss plaintiffs, and, in the alternative, obtain executed authorizations from each plaintiff. Thereafter, the plaintiffs requested a conference to clarify the Court's ruling, and again, it was suggested that the parties come to some agreement in

The Honorable Joan G. Margolis
December 3, 2003
Page 2

keeping with the ruling. The defendants and plaintiffs agreed to this proposal, and the defendants drafted authorizations, along with the Schedule A that had been previously attached to the subpoenas, which were sent to plaintiffs' counsel on October 6, 2003. Executed authorizations have been received and sent to Dr. Kirchner's office in the majority of the cases; however, authorizations are still outstanding in the matters of Laskevtich v. Metro North, et al., Koval v. Metro North, et al., Sullivan v. Metro North, et al., Rodriguez v. Metro North, et al., Selmont v. Metro North, et al., and Walz v. Metro North, et al.[1] To date, no documents have been received by Dr. Kirchner's office, although Dr. Kirchner called defendants' counsel this morning and left a voice message requesting direction as to production; however, undersigned counsel suggested that Dr. Kirchner's questions be addressed in the presence of plaintiffs' counsel, to which Dr. Kirchner agreed, and undersigned counsel then contacted plaintiffs' counsel in order to arrange an appropriate conference.

During the telephone conference conducted by the Court in early October, 2003, the Court suggested that any documents which the plaintiffs deemed privileged be reviewed, at their request, by the Court. Accordingly, 14 unidentified plaintiffs have requested such a review in connection with letters authored by Attorney Cahill to the majority of the plaintiffs, which were admittedly produced to Dr. Kirchner at the time that each plaintiff visited Dr. Kirchner's office for his respective hearing test. By disclosing this correspondence to Dr. Kirchner, the plaintiffs' treating physician, these unidentified plaintiffs have waived the attorney-client privilege which they now attempt to assert in an effort to preclude production of these documents to the defendants.

The plaintiffs' counsel argue that the documents should not be produced by Dr. Kirchner on three grounds: (1) they are not responsive to the documents requested; (2) they are protected by the attorney-client privilege; and (3) the "clients" inadvertently provided these letters to Dr. Kirchner. The plaintiffs fail to provide any case law in support of their position.

1.    The Unidentified Plaintiffs Have Waived The Attorney-Client By Producing
      These Letters To Dr. Kirchner:

By voluntarily producing the letters contained in plaintiffs' Appendix A to Dr. Kirchner, which have not been disclosed to the defendants, they have waived the attorney-client privilege. Preliminarily, the attorney-client privilege protects professional advice rendered from the attorney to the client to the extent that the advice reflects information provided by the client to the lawyer that the client intended to remain confidential. See Upjohn Co. v. United States, 449 U.S. 383, 401, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); In re Six Grand Jury Witnesses, 979 F.2d 939, 943-944 (2nd Cir. 1992). In addition, the attorney-client privilege applies to documents containing privileged communications. Multiform Dessicants, Inc. v. Stanhope Prods. Co., 930 F. Supp. 45, 47 (W.D.N.Y. 1996). As the defendants have not reviewed the documents in

---

[1] The defendants have requested, by letter dated December 2, 2003, that the plaintiffs produce the authorizations immediately, as they were sent on October 6, 2003, and close to two (2) months have elapsed since that time.

The Honorable Joan G. Margolis
December 3, 2003
Page 3

question, it is impossible to determine whether these "letters" are protected in the first instance by the attorney-client privilege at all.

However, assuming *arguendo* that the privilege would apply had the plaintiffs not waived it, under both federal and Connecticut law, "the burden of establishing attorney-client privilege, in all its elements, always rests upon the person asserting it." U.S. v. Schwimmer 892 F.2d 237, 242 (2d Cir. 1989); State v. Hanna, 150 Conn. 457, 465-66, 191 A.2d 124 (1963); United States v. Aldman, 68 F.3d 1495, 1500 (2nd Cir. 1995); Fry v. McCall, No. 95 Civ. 1915, 1998 U.S. Dist. LEXIS 7833 at *5 (S.D.N.Y. May 28, 1998); EDO Corp. v. Newark Ins. Co., 145 F.R.D. 18, 22 (D. Conn. 1992) (Connecticut law applied in diversity case). The unidentified plaintiffs have clearly not met this burden.

By intentionally providing Dr. Kirchner with a copy of the letter sent by Attorney Cahill at the time of their medical examinations, the plaintiffs clearly waived the attorney-client privilege. "A privileged communication is vitiated if subsequently disclosed for any purpose other than to facilitate the attorney's performance of legal services." In re John Doe Corp., 675 F.2d 482, 488 (2d Cir. 1982). Further, the attorney-client privilege does not require that the privilege holder, the plaintiff in these cases, intentionally relinquish a known right. The fact that the plaintiff(s) disclosed these documents to Dr. Kirchner and/or members of his staff which contain allegedly privileged information is more than enough to constitute a waiver of the privilege. Thus, the defendants are entitled to these documents, as no attorney-client privilege applies.

Further, the attorney-client privilege is the client's to waive. Whether or not the plaintiffs were instructed to disclose the letters, as Attorney Cahill states they were not in his *Affidavit*, attached as Appendix B to the plaintiffs' correspondence is irrelevant. Moreover, Attorney Cahill's claim that "it was never intended that Dr. Kirchner would receive a copy of the letter," is similarly without merit, as the plaintiffs clearly intentionally disclosed the letters to Dr. Kirchner, whether that was counsel's intention or not.

2.   The Unidentified Plaintiffs Did Not "Inadvertently" Disclose The Letters, As The Plaintiffs Argue, But Instead Intentionally Provided Dr. Kirchner With The Letters, Thereby Waiving The Attorney-Client Privilege:

The plaintiffs' argument that they "accidentally" disclosed the allegedly protected letters to Dr. Kirchner is absurd, and is obviously a desperate attempt to preclude discovery. First, the plaintiffs provide absolutely no factual or legal support for their position that they did not intend to disclose the letters at issue. Instead, the plaintiffs collectively state, in the absence of any factual explanation whatsoever, that this disclosure was inadvertent. Based upon the lack of support for this contention, as well as the plain admission that these plaintiffs' supplied Dr. Kirchner with the documents, clearly indicates that the disclosure was intentional rather than inadvertent. Moreover, as stated above, there is no requirement that a plaintiff intentionally

The Honorable Joan G. Margolis
December 3, 2003
Page 4

relinquish a known right, the mere disclosure is all that is needed to waive the privilege.

Even if there was some support for the unidentified plaintiffs' argument that they inadvertently disclosed these documents to Dr. Kirchner, numerous multiple factors must then be considered in order to determine whether waiver should be implied, although the defendants strongly deny that the disclosure was inadvertent. *See* United States v. United Tech. Corp., 979 F. Supp. 108, 116 (D. Conn. 1997). These factors include: (1) the reasonableness of the precautions taken to prevent inadvertent disclosures; (2) the time taken to rectify any error; (3) the scope of discovery; (4) the overriding issues of fairness; and (5) the extent of the disclosure. Id. Based upon the complete lack of information contained in the plaintiffs' correspondence, it is impossible to properly analyze these factors, although this is not the first instance of such disclosure.

Notably, the plaintiffs' counsel was well-aware that Dr. Kirchner possessed these documents and nothing prior to their November 26, 2003, to rectify the matter. Specifically, in the matter of Corban v. Consolidated Rail Corporation, et al., (C.A. NO.03:02CV 2033 (PCD), the defendants served a subpoena upon Dr. Kirchner's office requesting copies of the plaintiff's records. Neither the plaintiff, nor Dr. Kirchner objected to this request, and Dr. Kirchner thereafter produced several documents pertaining to his treatment of the plaintiff. Included in the production was a letter from Cahill & Goetsch reminding Mr. Corban of the date he needed to remember in order to defeat a statute of limitations defense. *See* Exhibit "A," attached hereto. In the event that the "letters" that the unidentified plaintiffs now seek to protect, despite waiving their privilege, are similar to the letter produced in the Corban matter, not only are these highly relevant to the defense of these matters, but they put the plaintiffs' counsel on notice that such documents were being produced by the plaintiffs. Yet, the plaintiffs' counsel did nothing to address this disclosure.

The unidentified plaintiffs cannot be allowed to assert a privilege, which they clearly waived, on the grounds that the disclosure was inadvertent. Accordingly, the documents should be produced by Dr. Kirchner.

3.    The "Letters" Are Responsive Documents:

Once again, the lack of information provided to the defendants makes it difficult to properly address whether the "letters" at issue are responsive to the defendants' requests. However, most notably, upon the suggestion of the Court, and in the spirit of cooperation and efficiency, the defendants agreed to withdraw the subpoenas which they previously expended a great deal of time and expense preparing, and alternatively prepared authorizations to be signed by the plaintiffs and forwarded to Dr. Kirchner. In an effort to most expeditiously resolve the plaintiffs' counsel concerns, as expressed in the conference with the Court in early October, the defendants also attached "Schedule A," to the authorizations (which was the same Schedule "A" attached to the subpoena served in Corban, which Dr. Kirchner's office produced a similar letter

The Honorable Joan G. Margolis
December 3, 2003
Page 5

in response to, as well as the subpoenas which were withdrawn). The defendants were especially cooperative in light of the fact that each and every plaintiff, in his respective *Responses to Defendants' First Set of Requests For Production of Documents,* all of which were <u>identical</u>, refused to provide any authorizations whatsoever in response to the defendants' request for medical authorization.[2]

        Even more offensive is that the plaintiffs now claim, again without providing a shred of support, that the "letters" are not documents which are responsive to the defendants' requests. The plaintiffs cannot be allowed to capitalize on their suspect discovery practices and uncooperative attitudes by withholding these "letters." Moreover, the plaintiffs' misleadingly omit the authorizations which were sent to Dr. Kirchner from their Appendix "C," and instead provide only the Schedule "A," which the plaintiffs know was merely attached in an effort to assist Dr. Kirchner in his efforts. The authorization, a sample of which is attached hereto as Exhibit "B," clearly and unequivocally requests Dr. Kirchner's "complete records." If the letters are contained within Dr. Kirchner's records relating to the unidentified plaintiffs, they are most certainly a part of his "complete records." Additionally, in the cover letter sent to Dr. Kirchner, a sample copy of which is attached hereto as Exhibit "C," the defendants clearly state that his office produce any and all documents responsive to the authorization <u>and</u> the Schedule "A." The suggestion that these letters were produced for an *in camera* review only as a benevolent precaution on the part of the plaintiffs is ridiculous, as these letters are clearly a part of Dr. Kirchner's records (as they were maintained by Dr. Kirchner, despite Attorney Cahill's statements that they were given to Dr. Kirchner's staff by the plaintiffs as they were merely using them for directions).

        Accordingly, for all of these reasons discussed herein, the defendants' request a hearing in connection with the Court's review of unidentified plaintiffs' request for *in camera* review, or, in the alternative, the defendants respectfully request that the Court find that the plaintiffs waived the attorney-client privilege, if one existed in the first place, and that Dr. Kirchner produce these letters to the defendants immediately.

        Thank you for your attention to this matter.
                                        Sincerely,


                                        Lori A. McCarthy

Encl.
Cc:    Michael B. Flynn, Esq.
       William B. Hicks, Esq.
       Scott E. Perry, Esq.
       Anthony D. Sutton, Esq.
G:\F & A\CASE FILES\CSX OCCUPATIONAL\HEARING LOSS\General Hearing Loss\Correspondence\LTJ\Margolis re in camera review 12.2.03.doc

---

[2] In fact, no one document was produced by any plaintiff in response to the defendants' requests. The defendants have more fully addressed this issue in a *Motion to Compel,* which they anticipate filing this week.

## CAHILL & GOETSCH, P.C.
ATTORNEYS AT LAW

GEORGE J. CAHILL, JR.

August 22, 2002

43 TRUMBULL STREET
NEW HAVEN, CONNECTICUT 06511

(203) 777-1000
Fax: (203) 865-5904

Mr. James Corban
291 B Reichelt Road
New Milford, New Jersey 07646

Dear Mr. Corban:

We have selected your case to be filed with a group of other employees in the United States District Court in the next couple of months. However, you will need to see an ENT (Ear, Noise, & Throat) specialist for an examination and audiogram.

You certainly may choose a local ENT specialist if you prefer, but we strongly recommend the follow physician:

J. Cameron Kirchner, M.D.    *Oct 22. 1130*
40 Temple Street
New Haven, CT 06510; Telephone: (203) 787-2114

Although the travel to New Haven is an inconvenience, it will be worth your while. If you choose to go to a local ENT specialist in your home area, you will have to provide us with a report indicating you do have a noise induced hearing loss caused by your exposure to occupational noise on the Railroad.

When you schedule an appointment at Dr. Kirchner's office, please let them know that we referred you. You will not be required to make any payment at Dr. Kirchner's office and insurance will not be necessary.

Please contact an ENT specialist so that your examination is completed as soon as possible. If you are unable to do so, we will file your claim at some later time in the future. However, we think it would unnecessarily delay your claim.

Please remember that there is a three (3) year Statute of Limitations from the time that you knew or should have known that you were experiencing some problems relating to hearing loss. We are claiming that you first became aware of a hearing loss problem on February 7, 2001.

If you have any questions, please feel free to contact me. Thank you.

Very truly yours,

George J. Cahill, Jr.

GJC:md

## AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION

1.      I hereby authorize the office of **J. Cameron Kirchner, M.D.** to use or disclose the following protected health information from the medical records of the patient listed below.  I understand that information used or disclosed pursuant to this authorization could be subject to re-disclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

2.)     Patient Name:  _Robert C. Black_     Date of Birth:  _8-28-47_

Address: _138 South St. Rosendale    NY    12472_
          Street               City          State        Zip

3.      Information to be disclosed to: <u>LORI A. McCARTHY, ESQ.</u>
                                  Name
                            <u>FLYNN & ASSOCIATES, P.C., 189 STATE STREET</u>
                                    Address
                            <u>BOSTON          MA          02109</u>
                              City         State       Zip

4.      Disclose the following information for treatment dates: _____to_____

☑ Complete Records    ☐ Consult        ☐ Physical Therapy
☐ Abstract             ☐ Outpatient Reports  ☐ Emergency Reports
☐ Face Sheet          ☐ X-Rays        ☑ Other Specified
                                               _see attached_

☐ Discharge Summary  ☐ Laboratory
☐ History & Physical    ☐ Pathology

5.      The above information is disclosed for the following purposes:

☐ Medical Care   ☑ Legal    ☐ Insurance   ☐ Personal   ☐ Other _____

6.      I understand I may revoke this authorization at any time by requesting such of the above referenced hospital/physician practice in writing, unless action has already been taken in reliance upon it, or during a contestability period under applicable law.

7.      This authorization expires on [upon] _November, 15, 2004_
                                            Date or Event

_Robert C Black_                        _10-28-03_

8.) Signature of Patient or Legal Representative      9.) Date
Robert Black

10.  Printed Name of Patient or Patient's Representative    11.  Relationship to Patient or
                                                      Authority to Act For Patient
                                                        (Patient Representative Only)

IMPORTANT:  THIS AUTHORIZATION SHALL BE DEEMED INVALID UNLESS ALL NUMBERED ENTRIES ARE COMPLETED

## SCHEDULE "A"

I.    **DEFINITIONS:**

(1)    For the purpose of responding to these requests, "you" and "yours" shall mean: Dr. J. Cameron Kirchner; any employee, agent or servant of Dr. J. Cameron Kirchner; any practice, group, association, corporation, affiliation, company, organization, hospital, clinic, partnership, business or any other entity with which Dr. J. Cameron Kirchner is or was associated or by which he is or was employed.

(2)    For the purposes of responding to these requests, "Cahill & Goetsch" shall mean: the principals, owners, directors, officers and/or partners of Cahill & Goetsch including, but not limited to, George Cahill, Esq.; the associates, employees, agents and/or servants of Cahill & Goetsch; the predecessors, successors and assigns of Cahill & Goetsch.

(3)    For the purpose of responding to these requests, "documents" shall include, but will not be limited to, contracts, agreements, understandings, correspondence, letters, pamphlets, photocopies, notes (handwritten, typed or printed), test results, post-cards, microfilm/microfiche, computer records (whether stored on a hard disk, CD-ROM, floppy diskette or any other means of computer storage and retention), photographs, videotapes, films, graphs, charts, writings, drawings, papers, memoranda, ledgers, handwritten or typed materials, cassette tapes, books, folders, files, cards, checks, invoices, statements, bills, carbon copies, receipts, electronic mail messages (whether printed hard copies or still maintained in your computer), computer print outs and/or any other data compilations from which information can be obtained.

(4)    For the purpose of responding to these requests, "screening event" and/or "screenings" shall include, but will not be limited to, any and all meeting(s), assembly(s), gathering(s), and/or screening(s) involving railroad employee(s) from January 1, 1993 to the present for the purpose of assessing, soliciting and/or screening alleged hearing loss claims.

II.    **REQUESTS:**

You are required to produce the following:

(1)    Any and all medical records and bills in your possession relating to Robert Black; D/O/B: 8/2/47; SS#: 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, including but not limited to hospital records, emergency room records, pharmacy records, doctors' and nurses' notes and/or reports, reports of physical examinations and laboratory reports, audiometric testing, X-ray, MRI, EMG or CT scan reports and physical therapy reports, progress notes and

consultations, medication records and physicians order, admission and discharge reports or summaries, operative or surgical reports, pathology reports, correspondence between physicians and any insurance company or attorney and patient billing.

(2)    Any and all documents pertaining to any "screening event" which was conducted by you or by Cahill & Goetsch, P.C. relative to railroad workers' hearing.

(3)    Any and all documents pertaining to your relationship with Cahill & Goestch, P.C. as it has existed at any and all times since January 1, 1993. **TO BE PRODUCED TO CAHILL & GOETSCH.**

(4)    Any and all documents pertaining to any and all agreements, contracts, compensation agreements, and/or memoranda of understanding between you and Cahill & Goetsch, P.C. which have been in effect at any time since January 1, 1993. **TO BE PRODUCED TO CAHILL & GOETSCH.**

(5)    Any and all documents pertaining to communications between you and Cahill & Goetsch, P.C. regarding the plaintiff. **TO BE PRODUCED TO CAHILL & GOETSCH.**

(6)    Any and all documents pertaining to payments, reimbursements and/or compensation Cahill & Goetsch, P.C. has paid, made, owed and/or promised to you in connection with and/or related to any "hearing loss screening," including, but not limited to, invoices, statements, bills, tax forms, returns or related tax documents (including, but not limited to Form 1099s), receipts, cancelled checks, ledgers and/or payment stubs. **TO BE PRODUCED TO CAHILL & GOETSCH.**

(7)    Any and all documents pertaining to payments, reimbursements and/or compensation Cahill & Goetsch, P.C. has paid, made, owed and/or promised to you in connection with and/or related to the plaintiff, including, but not limited to, invoices, statements, bills, tax forms, returns or related tax documents (including, but not limited to Form 1099s), receipts, cancelled checks, ledgers and/or payment stubs. **TO BE PRODUCED TO CAHILL & GOETSCH.**

(8)    Any and all documents pertaining to the results of the tests which were conducted at screenings from January 1, 1993.

(9)    Any and all documents pertaining to the ownership of the audiometer used to test the plaintiff.

(10)    Any and all documents pertaining to your relationship (i.e., ownership, lease, rent, or other) to the audiometer used to test the plaintiff.

(11)    Any and all documents pertaining to the proper use of and standards of care for the audiometer including, but not limited to: owner's manuals; maintenance requirements, standards and schedules; calibration requirements, standards and schedules; periodic testing requirements, standards and schedules; and/or repair requirements, standards and schedules.

(12)    Any and all documents pertaining to any and all maintenance, calibration, testing and/or repair which was performed on the audiometer at any time.

(13)    Any and all documents showing the number of times the audiometer used to test the plaintiff has been used.

(14)    Any and all documents showing the locations at which the audiometer used to test the plaintiff has been used.

(15)    Any and all documents showing the number of times the audiometer has been used to the test the plaintiff.

(16)    Any and all documents pertaining to education, training and/or instruction provided to technicians who attended any hearing screenings.

(17)    Any and all documents pertaining to education, training and/or instruction provided to technician and/or physician in connection with the audiometer used to test the plaintiff who tested or participated in the testing or results thereof of the audiometer testing of the plaintiff.

(18)    Any and all documents provided to you by Cahill & Goetsch, P.C. relative to the plaintiff. **TO BE PRODUCED TO CAHILL & GOETSCH.**

(19)    Any and all documents provided by you to Cahill & Goetsch, P.C. relative to the plaintiff. **TO BE PRODUCED TO CAHILL & GOETSCH.**

# FLYNN & ASSOCIATES, P.C.

### ATTORNEYS AT LAW

189 STATE STREET
SIXTH FLOOR
BOSTON, MASSACHUSETTS 02109
TELEPHONE (617)722-8253
FACSIMILE (617)722-8254
E-MAIL: flynnlaw@flynnassoc.com

MICHAEL B. FLYNN*
RICHARD A. DAVIDSON, JR.
LORI A. MCCARTHY*
JOHN E. YOUNG, IV
WILLIAM ROA

*also admitted in NY
*also admitted in CT

OF COUNSEL:
DURKIN, MCDONNELL, CLIFTON,
O'DONNELL & MOORE

DETROIT OFFICE:

PENOBSCOT BUILDING
645 GRISWOLD STREET
SUITE 3253
DETROIT, MICHIGAN 48226
TELEPHONE (313)963-3033
FACSIMILE (313)963-3011

October 23, 2003

Keeper of Records
J. Cameron Kirchner, M.D.
Temple Medical Center
40 Temple Street
New Haven, CT 06510

RE:    BLACK vs. CONSOLIDATED RAIL CORPORATION, et al.
       U.S.D.C., CONNECTICUT (Hartford), C.A. NO.: 3:02 CV 1873 (AVC)

Dear Sir or Madam:

Enclosed please find an *Authorization To Use Or Disclose Protected Health Information,* with attached Schedule "A," signed by the plaintiff in the above-entitled matter. Kindly forward to me any and all responsive documents pursuant to the *Authorization* and the attached Schedule "A," unless otherwise directed in the Schedule (as certain responsive documents should be sent to Cahill & Goetsch). If there is any charge associated with this request, please forward a bill for the same to my office.

Thank you for your immediate attention to this matter.

Sincerely,

Lori A. McCarthy

Encl.
cc:    Michael B. Flynn, Esq.
       Scott E. Perry, Esq.
       Anthony D. Sutton, Esq.
       G:\F & A\CASE FILES\CSX OCCUPATIONAL\HEARING LOSS\Black\Correspondence\Misc\Kirchner w.authorization 10.23.03.doc