UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

| | |
|---|---|
| THOMAS KINIRY, | CIVIL ACTION |
| Plaintiff | NO. 3:02CV01680 (JBA) |
| VS. | FELA HEARING LOSS CASES MAY BE FILED IN NEW HAVEN AS ORDERED BY MAGISTRATE JUDGE MARGOLIS. |
| METRO-NORTH RAILROAD COMPANY, CONSOLIDATED RAIL CORPORATION, and AMERICAN FINANCIAL GROUP, INC., f/k/a AMERICAN PREMIER UNDERWRITERS, INC., f/k/a PENN CENTRAL CORPORATION, | |
| Defendants | MARCH 10, 2004 |

_____ _____X

### DEBI KINIRY'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO QUASH CONRAIL'S SUBPOENA AND HER MOTION FOR A PROTECTIVE ORDER

Debi Kiniry's deposition should be prevented because any testimony is protected by the marital communication privilege, the marital facts privilege and because the deposition is an attempt to annoy, embarrass and harass her. Furthermore, this avenue of discovery is duplicative of prior discovery in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the Court should quash Conrail's February 12, 2004 dated subpoena and issue a protective order preventing Mrs. Kiniry's deposition.[1]

**ORAL ARGUMENT REQUESTED.**
**TESTIMONY NOT REQUIRED.**

## I. FACTS

On August 25, 2003, the defendants deposed Mr. Kiniry for approximately four hours. Conrail served Mrs. Compo with a subpoena compelling her testimony in this case on March 16, 2004. App. 2. Mr. Kiniry and Mrs. Kiniry are married. App. 3 This case does not involve a loss of consortium claim. Moreover, Mrs.Kiniry was not listed as a witness by either party and the plaintiff has no intention to call her as a witness at trial and will not call her as a witness. Undersigned counsel conferred with defense counsel in good faith and this matter could not be resolved by agreement. App. 4.

## II. DISCUSSION

### a. Federal Marital Communications Privilege

The Court should quash the subpoena and preclude Mrs. Kiniry's deposition because the information sought will violate the federal marital communications privilege (FMCP). The FMCP extends to all words or acts intended as a communication to the other spouse if made in confidence during a valid marriage. U.S. v. Marashi, 913 F.2d 724, 730 (9th Cir. 1990). The non-testifying spouse has standing to raise the FMCP. Id. at 729; U.S. v. 281 Syosset Woodbury Rd., 862 F. Supp. 847, 854 (E.D.N.Y. 1994); aff'd, 71 F.3d 1067 (2nd Cir. 1995). The FMCP can be raised in criminal and civil proceedings. See Syosset, 862 F.Supp. at 854.

Accordingly, the Court should quash the subpoena and prevent the deposition because the expected line of questioning will violate the FMCP. See also Fed R. Civ. P. 45(c)(3)(A)(iii), 30(d)(4), 26(b)(2) and 26(c).

---

[1] Mrs. Kiniry retained undersigned counsel to represent her in connection with the subpoena. An appearance is attached hereto as App. 1.

2

### b. Connecticut Anti-Marital Facts Privilege

In Connecticut, a non-party spouse in a civil action cannot be forced to give testimony against his or her party-spouse. Spitz's Appeal, 56 Conn. 184, 186, 14 A. 776 (1888); Chandler v. Cardiothoracic and Vascular Group, P.C., Superior Court of Connecticut, Judicial District of Waterbury at Waterbury, X02CV94014718, Nov. 18, 1998 (Sheldon, J.)(a copy is attached hereto at App. 5); Degruttola v. Barry Britt, Superior Court of Connecticut, Judicial District of Hartford-New Britain, at Hartford, No. FA 95 0551058, January 2, 1996 (Barall, J.)(copy attached hereto at App. 5). The party-spouse has standing to seek and obtain a protective order. Chandler, supra. In Chandler, a party sought to depose the wife of another party. The husband-party moved for a protective order preventing the deposition and the Court granted the order. Judge Sheldon held in Connecticut a party spouse has standing to seek a protective order preventing the deposition of a non-party spouse, and the common-law privilege against spousal testimony requires granting a motion for protective order. Id. Judge Sheldon relied, in part, on State v. Saia, 172 Conn. 37, 42-44, 372 A.2d 144 (1976). In Saia, the Connecticut Supreme court stated "[a]t early common-law the husband or wife of a party was disqualified as a witness and prevented from testifying either for or against the party in any case, either civil or criminal." A rational behind the common-law privilege against adverse spousal testimony is to prevent marital discord. Spitz's Appeal, 56 Conn. 184, 186, 14 A. 776 (1888).

Mrs. Kiniry does not wish to be compelled to testify in this case and doing so would violate her anti-marital facts privilege and possibly strain marital relations with her husband. Accordingly, the Court should grant Mrs. Kiniry's Motion To Quash and enter

3

a protective order barring her deposition.  See Chandler, supra, see also Fed. R. Civ. P. 45(c)(3)(A)(iii), 30(d)(4), and 26(b)-(c).

### c. Annoyance and Harassment

Conrail's apparent motive is to annoy and harass Mrs. Kiniyr.  Conrail has not made any proffer of how any testimony from Mrs. Kiniry is reasonably calculated to lead the discovery of admissible evidence.  Accordingly, the Court should prevent the deposition because the only discernable motive is to annoy and harass the plaintiff and his wife.  See Fed. R. Civ. P. 45(c)(iv), 30(d)(4), 26(b)(2)(i) and 26(c).

### d. Cumulative and Duplicative

Any information sought from Mrs. Kiniry would be cumulative and duplicative of information already gathered from her husband.  See Fed R. Civ. P. 26(b)(2)(i) and 26(c).  Accordingly, the Court should quash the subpoena and prevent a deposition of Mrs. Kiniry on this basis as well.

## III.  CONCLUSION

For the foregoing reasons, the Court should Quash Conrail's subpoena and enter a protective order preventing Mrs. Kiniry's deposition.

4

Respectfully submitted,

FOR DEBI KINIRY,

BY _____
Scott E. Perry (ct17236)
CAHILL & GOETSCH, P.C.
43 Trumbull Street
New Haven, Connecticut  06511
(203) 777-1000

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid, on this 10th day of March, 2004 to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut 06905.

_____
Scott E. Perry

5

# _APPENDIX  1_

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

THOMAS KINIRY,                                    CIVIL ACTION

    Plaintiff                                      NO. 3:02CV01680 (JBA)

VS.

METRO-NORTH RAILROAD COMPANY,
CONSOLIDATED RAIL CORPORATION, and
AMERICAN FINANCIAL GROUP, INC., f/k/a
AMERICAN PREMIER UNDERWRITERS, INC.,
f/k/a PENN CENTRAL CORPORATION,

    Defendants                                    MARCH 10, 2004
_____X

## **APPEARANCE**

TO THE CLERK:

    Please enter my appearance on behalf of Debi Kiniry in the above-entitled matter.


             Respectfully submitted,


             FOR DEBI KINIRY,


    By _____
        Scott E. Perry (ct17236)
        CAHILL & GOETSCH, P.C.
        43 Trumbull Street
        New Haven, Connecticut 06511
        (203) 777-1000

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 10th day of March, 2004, to Lori A. McCarthy, Esq., Flynn & Associates, P.C., 189 State Street, 6th Floor, Boston, Massachusetts 02109; and to Anthony D. Sutton, Esq., Ryan, Ryan, Johnson & Deluca, LLP, 80 Fourth Street, P.O. Box 3057, Stamford, Connecticut 06905.

_____
Scott E. Perry

# *APPENDIX  2*

OAO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

UNITED STATES DISTRICT COURT 

DISTRICT OF CONNECTICUT

Thomas Kiniry

V.

Metro North Railroad Company, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    3:02 CV 1680 (JBA)

TO:    **Debbie Kiniry**
    **5 John George Drive**
    **Meriden, CT 06450**

    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

**X**   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION<br>**Ruane, Attorneys at Law, 10 Middle Street, 11th Floor, Bridgeport, CT 06604** | DATE AND TIME<br>**3/16/04**     **10:00 a.m.** |
|---|---|

    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE<br>**Ruane, Attorneys at Law, 10 Middle Street, 11th Floor, Bridgeport, CT 06604** | DATE AND TIME<br>**3/16/04**     **10:00 a.m.** |
|---|---|

    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for defendants Consolidated Rail Corp.<br>And American Financial Group, Inc. | DATE<br>2/12/04 |
|---|---|

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
John E. Young, Esq., Flynn & Associates, P.C.
189 State Street 6th Floor
Boston, MA 02109      (617) 722-8253

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)    fails to allow reasonable time for compliance,
    (ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

    (iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

    (iv)  subjects a person to undue burden.

    (B) If a subpoena

    (i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

    (ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or

    (iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS KINIRY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| METRO-NORTH RAILROAD | ) |
| COMPANY, CONSOLIDATED RAIL | ) |
| CORPORATION and AMERICAN | ) |
| FINANCIAL GROUP, INC., f/k/a | ) |
| AMERICAN PREMIER | ) |
| UNDERWRITERS, INC., | ) |
| f/k/a PENN CENTRAL CORPORATION. | ) |
| | ) |
| Defendants. | ) |
| | ) |

CIVIL ACTION
NO.:   3:02 CV 01680 (JBA)

February 12, 2004

## NOTICE OF DEPOSITION

**PLEASE TAKE NOTICE** that on March 16, 2004 at 10:00 a.m. at Ruane, Attorneys at

Law, 10 Middle Street, 11th Floor, Bridgeport, CT 06604, the defendant, Consolidated Rail

Corporation, pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, will take the

deposition of Debbie Kiniry, 5 John George Drive, Meriden, CT before some officer authorized

by law to administer an oath.

You are invited to attend and cross-examine.

1

Respectfully submitted,
The defendants CONSOLIDATED RAIL
CORPORATION and AMERICAN FINANCIAL
GROUP, INC.,
By and through their attorneys,


John E. Young, #ct24689
FLYNN & ASSOCIATES, P.C.
189 State Street, 6th Floor
Boston, MA 02109
(617) 722-8253
(617) 722-8254 (facsimile)

2

## CERTIFICATION

This is to hereby certify that a copy of the foregoing *Notion of Deposition* and *Subpoena* has been mailed, postage prepaid, on this 12th day of February, 2004 to the following:

Scott E. Perry, Esq.
Cahill & Goetsch, P.C.
43 Trumbull Street
New Haven, CT 06511

Anthony Sutton, Esq.
Ryan, Ryan, Johnson & Deluca, LLP
P.O. Box 3057
Stamford, CT 06905

John E. Young

G:\F & A\CASE FILES\CSX OCCUPATIONAL\HEARING LOSS\Kiniry (CR)\PLEADINGS\Debbie Kiniry Notice of Depo 2-11-04 doc

3

# *APPENDIX  3*

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

—————————————————————X

THOMAS KINIRY,                              CIVIL ACTION

     Plaintiff                              NO. 3:02CV01680 (JBA)

VS.                                         FELA HEARING LOSS CASES
                                        MAY BE FILED IN NEW HAVEN
                                        AS ORDERED BY
                                        MAGISTRATE JUDGE MARGOLIS.

METRO-NORTH RAILROAD COMPANY,
CONSOLIDATED RAIL CORPORATION, and
AMERICAN FINANCIAL GROUP, INC., f/k/a
AMERICAN PREMIER UNDERWRITERS, INC.,
f/k/a PENN CENTRAL CORPORATION,

     Defendants                           MARCH 10, 2004
—————————————————————X

## AFFIDAVIT OF THOMAS KINIRY

STATE OF CONNECTICUT )
                     ) ss:  New Haven
COUNTY OF NEW HAVEN )

    1.  My name is Thomas Kiniry.  I am over 18 years of age and reside in Meriden,

Connecticut and I understand the obligations of an oath.

    2.  My wife is Debi Kiniry.

3.  We were married on September 26, 2003 and we remain married through the present date.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

Thomas Kiniry

Subscribed and sworn to before me this ___*10*___ day of March, 2004.

Commissioner of the Superior Court

2

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.


_____
Scott E. Perry


Subscribed and sworn to before me this 10th day of March, 2004.


_____
Notary Public
My Commission Expires: 2/28/2005

MARILYN A. DONROE  Notary Public
My Commission Expires: 2/28/2005

2

# *APPENDIX  4*

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

THOMAS KINIRY,                                    CIVIL ACTION

     Plaintiff                                    NO. 3:02CV01680 (JBA)

VS.                                                FELA HEARING LOSS CASES
                                                   MAY BE FILED IN NEW HAVEN
                                                   AS ORDERED BY
                                                   MAGISTRATE JUDGE MARGOLIS.

METRO-NORTH RAILROAD COMPANY,
CONSOLIDATED RAIL CORPORATION, and
AMERICAN FINANCIAL GROUP, INC., f/k/a
AMERICAN PREMIER UNDERWRITERS, INC.,
f/k/a PENN CENTRAL CORPORATION,

     Defendants                                  MARCH 10, 2004
_____X


### AFFIDAVIT OF SCOTT E. PERRY


STATE OF CONNECTICUT )
                    ) ss: New Haven
COUNTY OF NEW HAVEN )

    1. My name is Scott E. Perry. I am over 18 years of age and I understand the

obligations of an oath.

    2. On March 10, 2004, I conferred with Conrail's attorney, John Young, in good

faith concerning the subpoena he served on Mr. Kiniry's wife, Debi Kiniry. Attorney

Young refused to withdraw the subpoena.

## *APPENDIX  5*

10 of 16 DOCUMENTS

**John P. Chandler, M.D. v. Cardiothoracic and Vascular Group, P.C. et al.**

**X02 CV 94014718**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF WATERBURY, AT WATERBURY**

*1998 Conn. Super. LEXIS 3248*

**November 18, 1998, Decided**

**November 18, 1998, Filed**

**NOTICE:**
[*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:**
Plaintiffs' motion for protective order GRANTED.

**JUDGES:**
MICHAEL R. SHELDON, J.

**OPINIONBY:**
MICHAEL R. SHELDON

**OPINION:**

MEMORANDUM ORDER ON MOTION FOR PROTECTIVE ORDER

Upon considering the briefs and oral arguments of counsel on plaintiffs' motion for protective order to prevent the deposition of Elaine V. Beckman, wife of plaintiff Charles B. Beckman, M.D., the Court hereby orders that said motion be GRANTED for the following reasons:

1. This is an action by nine plaintiff physicians against defendant Cardiothoracic & Vascular Group, P.C. ("CVG"), with which they formerly practiced medicine, and defendants Philip R. Fazzone, M.D. and Vasant Khachane, M.D., who at all times relevant hereto were shareholders, officers and directors of CVG. All nine plaintiffs contend that the defendants paid to themselves substantial sums of money that were collected by CVG for the plaintiffs' work, and which belonged to the plaintiffs. Plaintiffs' claims sound in fraud, breach of fiduciary duty, theft and unjust enrichment.

2. Defendants [*2] have asserted over 100 counterclaims, including claims against Dr. Beckman for breach of trust, tortious interference, invasion of privacy, defamation, theft, and breach of contract.

3. On March 19, 1998, defendants noticed the deposition of Mrs. Beckman. Though the notice of deposition does not give any information as to the topics on which Mrs. Beckman is sought to be deposed, the defendants have informed the Court that they wish to question her, *inter alia*, about: (1) certain personal conversations she may have had with defendant Dr. Khachane and/or CVG accountant, Charles Flaum, CPA, concerning her husband's financial treatment by CVG in the relevant time period; and (2) the circumstances, allegedly witnessed and/or participated in by her, surrounding her husband's alleged entry into and theft of information and/or documents from CVG's business offices, on which certain of defendants' counterclaims against him are based.

4. The plaintiffs claim that Mrs. Beckman cannot be forced to testify adversely to her husband in any Connecticut civil action. In support of this claim, they rely on the common-law privilege against the giving of adverse testimony, first formally [*3] recognized by our State Supreme Court in *Spitz's Appeal from Commissioners*, 56 Conn. 184, 186, 14 A. 776 (1888), and recently found to be "alive and kicking" in Connecticut by Judge Herbert Barall, in *DeGruttola v.*

1998 Conn. Super. LEXIS 3248, *

*Britt, 1996 Conn. Super. LEXIS 50,* No. FA 95-0551058, 15 CONN. L. RPTR. 596, *1996 WL 24575* (Conn. Super. Jan. 2, 1996).

5. The defendants oppose the plaintiffs' motion on two basic grounds: (1) that Connecticut has assertedly abrogated the common-law privilege not to testify adversely to one's spouse except in criminal cases, where the privilege, now codified at General Statutes 54-84a, n1 belongs exclusively to and can only be asserted by the testifying spouse; and (2) that even if the privilege can lawfully be asserted by a non-testifying spouse in a Connecticut civil case, there is no showing here that the testimony sought to be elicited from Mrs. Beckman would be so "adverse" to her husband as to come within the privilege.

n1 Conn. Gen. Stat. 54-84a provides:

Privilege of spouse. If any person on trial for crime has a husband or wife, he or she shall be a competent witness but may elect or refuse to testify for or against the accused, except that either spouse who has received personal violence from the other or is the spouse of one who is charged with violation of any of sections 53-20, 53-21, 53-23, 53-304, 53a-70, 53a-71 and 53a-88, inclusive, may, upon his or her trial for offenses arising out of such personal violence or from violation of the provisions of any of said sections, be compelled to testify in the same manner as any other witness.

[*4]

6. As Judge Barall aptly put it in *DeGruttola v. Britt, supra,* the spousal privilege against testifying adversely to one's spouse is still "alive and kicking" in Connecticut civil and criminal cases alike. As the plaintiffs rightly note, the privilege was first recognized by our State Supreme Court in *Spitz's Appeal from Commissioners, supra,* where the Court described its purpose and scope in the following terms:

The rule of the common law that the wife shall not testify against the husband is founded upon their legal unity and the policy of preventing discord between them. It is not applicable to actions at law in which the husband and wife have conflicting interests and are opposing parties, as petitions for divorce or suits by the wife seeking protection against the husband, and has no application to suits in equity relating to the wife's separate estate.

There, where a wife had voluntarily testified in support of her claim against the estate of her deceased husband, the Supreme Court ruled that her testimony was properly admitted because her interests and her husband's interests were conflicting with respect to that claim.

The Supreme Court's [*5] decision in *Spitz's Appeal from Commissioners* is significant in two respects. First, because it explicitly recognized the spousal privilege in the context of a civil proceeding, and only made exceptions to the application of the privilege for civil proceedings when the spouses' interests are conflicting, it clearly established that the privilege applies to all other types of civil proceedings where the spouses' interests are not in conflict. Second, because the claim of privilege there at issue was not made by the testifying spouse, its review without comment by the Supreme Court gives compelling evidence that the privilege could be asserted by either spouse, or by their respective privies.

7. The rule of *Spitz's Appeal from Commissioners* was not abrogated by the later passage of General Statutes 54-84a or any of its predecessors, which have long restricted the right to assert the privilege in criminal proceedings to the testifying spouse. This is so because the original version of Section 54-84a, which first imposed the restriction in question, predated the Supreme Court's decision in *Spitz's Appeal from Commissioners,* by over twenty years. n2 Plainly, the Supreme [*6] Court would not have discussed or based its ruling on an exception to a common-law rule had it believed that the rule was abrogated by statute twenty years before. *Accord, Tait and LaPlante's Handbook of Evidence* (2d Ed. 1988) 12.3.4, p. 437 (citing *Spitz's Appeal from Commissioners* for the proposition that, "Connecticut appears to follow the common-law rule that a spouse has a right not to testify against the other spouse in a civil action").

n2 The original version of Section 54-84a appeared as follows in "An Act concerning Crimes and Punishments," which was passed by our legislature in 1867: "[in] proceedings against persons charged with the commission of crimes, or offenses, the person so charged, or the husband or wife of such person, shall, at his or her own request, but not otherwise, be deemed a competent witness ..."

8. The next time the Connecticut Supreme Court comprehensively addressed the question of spousal privileges was in *State v. Saia, 172 Conn. 37, 42-44, 372 A.2d 144* [*7] *(1976).* There, in a criminal case where the defendant's wife testified against him voluntarily

despite warnings that she need not do so, the Court identified three distinct issues raised by the prospect of adverse spousal testimony:

(1) a spouse's disqualification as a competent witness, (2) a defendant spouse's privilege against adverse marital testimony, and (3) the privilege of confidential communications between spouses.

*Id.* at 42. "At early common law," the Court observed, "the husband or wife of a party was disqualified as a witness and prevented from testifying either for or against the party in any case, either civil or criminal." *Id. at 42.* In Connecticut, however, the Court duly noted, that the bar against all spousal testimony was lifted by statute. Citing *Spitz's Appeal from Commissioners, supra,* the Court noted particularly that:

common-law restriction against adverse spousal testimony was founded on the legal unity of the spouses and the policy of preventing discord between them. *Spitz's Appeal, 56 Conn. 184, 186, 14 A. 776* [1886]. The jurisdictions which, like Connecticut, have statutorily limited this restriction on adverse [*8] spousal testimony by allowing only the witness spouse to refuse to render such testimony have done so apparently on the theory that the witness spouse should be permitted to determine whether the marriage can or should be saved by a refusal to testify.

*State v. Saia, supra, 172 Conn. at 43.* Because the defendant's wife in the case before it had been informed of her right to testify and specifically stated that she understood that right and wished to waive it, the admission of her testimony was upheld.

9. The *Saia* case well demonstrates the interplay between the common-law privilege against giving adverse spousal testimony and the statutory restrictions upon that privilege now embodied in General Statutes 54-84a. That statute, like its predecessors, modifies the privilege in criminal cases only, by requiring that it be asserted, in such cases, by the testifying spouse. Consistent, however, with the well-settled rule that statutes in derogation of the common law must be strictly construed, *Yale University School of Medicine v. Collier, 206 Conn. 31, 37, 536 A.2d 588 (1988)*, Section 54-84a, like its many predecessors, must not be read [*9] to limit or restrict the common-law privilege in any other case to which it is applicable under the rule of *Spitz's Appeal*

*from Commissioners.* That rule still applies, without restriction or limitation, to most Connecticut civil cases.

10. Against this background, it is not surprising that our legislature has implicitly acknowledged the continuing vitality of the common-law privilege against adverse spousal testimony in civil cases by making explicit exceptions to its application in civil support and child support proceedings. See General Statutes 46b-203 and 17a-101(f). When the legislature passes a statute, it is presumed to be aware of existing law. By making an exception to that which was unquestionably a common-law rule or doctrine, the legislature gives clear notice that in its view, the rule or doctrine is still in force.

11. Finally, the Court rejects the defendants' argument that the testimony that they seek to elicit from Mrs. Beckman is not necessarily adverse to her husband, plaintiff Dr. Beckman. This assertion is flatly contradicted by counsel's candid descriptions of the intended areas of inquiry--conversations between Mrs. Beckman and officers or agents [*10] of CVG regarding CVG's financial arrangements with her husband and Mrs. Beckman's account of her husband's alleged break-in at and theft or documents or other information from CVG's business offices. Testimony about the former would quite possibly undermine Dr. Beckman's claims as to the state of her own knowledge as to the state of his own knowledge as to how he would be paid for his work and what, if any, differences there were in compensation packages between corporate shareholders and others. Testimony about the latter would help the defendants establish the elements of their counterclaims, and in so doing prove that Dr. Beckman had committed one or more criminal acts. It is simply nonsense that such testimony would be anything but adverse to Dr. Beckman.

12. For all of the foregoing reasons, the Court concludes that the plaintiffs' motion for protective order must be GRANTED. In so ruling, however, the Court hereby gives fair notice to the plaintiffs that they may not rely for any purpose on statements made to them by Mrs. Beckman or on any other information for which Mrs. Beckman must provide an essential testimonial link. To call her to testify at trial, or to rely upon [*11] her words or actions for any evidentiary purpose, after preventing the defendants from gaining access to her by deposing her, would be unfair and unreasonable. Such a course will not be tolerated in this case.

MICHAEL R. SHELDON, J.

12 of 16 DOCUMENTS

## JANET DEGRUTTOLA VS. CHARLES BARRY BRITT

### NO. FA 95 0551058

### SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF HARTFORD - NEW BRITAIN, AT HARTFORD

*1996 Conn. Super. LEXIS 50*

**January 2, 1996, Decided**

**January 2, 1996, FILED**

**NOTICE:**
**[*1]** THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**JUDGES:**
Barall, J.

**OPINIONBY:**
Barall

**OPINION:**

### MEMORANDUM OF DECISION ON MOTION FOR PROTECTIVE ORDER

This motion for protective order seeks to prevent the defendant's wife from testifying in a deposition in the context of a case where the estate of the defendant's former wife seeks posthumously to annul the previous marriage on the grounds of fraud. The motion presents the issue of whether the common law privilege against spousal testimony is alive and kicking in a civil case in Connecticut.

### FACTS

On April 16, 1977, the decedent, Dorothy Jane Britt, married the defendant, Charles Barry Britt. On January 12, 1995, Dorothy Jane Britt passed away. On February 9, 1995, the Bloomfield Court of Probate appointed the plaintiff, Janet DeGruttola, Executrix of the Estate of her mother, Dorothy Jane Britt.

On June 9, 1995, the plaintiff filed this action on the ground that the defendant allegedly stated under oath on the marriage license that he had previously been married once, where he had actually been married and **[*2]** divorced three times. The plaintiff alleges that Dorothy Jane Britt would not have married the defendant had she known not only that he had been married and divorced three times, but also that he had children from these previous marriages. The plaintiff further alleges that the defendant misappropriated, consigned, and/or converted property belonging to Dorothy Jane Britt. Based on these allegations, the plaintiff seeks an annulment of the marriage of Dorothy Jane Britt as well as the return of any property belonging to Dorothy Jane Britt.

On August 21, 1995, pursuant to Practice Book § 221, the defendant filed a motion for protective order to prevent a scheduled deposition of his wife, Jeanne Malley Britt. On August 28, 1995, the plaintiff filed an objection to the defendant's motion for protective order.

### ARGUMENT

The defendant argues that deposing Jeanne Malley Britt would violate her marital privilege against adverse spousal testimony and her confidential-communication privilege. The defendant argues that at common law, Connecticut recognizes the confidential-communication privilege.

The plaintiff argues that while Connecticut has statutorily adopted the common law rule **[*3]** of marital privilege for criminal cases pursuant to General Statutes § 54-84a, Connecticut has not similarly adopted this common law rule with regard to civil cases. In support of this argument, the plaintiff states that she has failed to discover one instance in which this common law marital

privilege has been adopted in the civil context. In addition, the plaintiff notes that Wigmore on Evidence rejects the predominant rationale for this privilege, specifically, that one spouse testifying against the other will cause marital discord. Finally, the plaintiff suggests that although Tait & LaPlante conclude that Connecticut recognizes the marital privilege against adverse spousal testimony in civil cases, they qualify their recognition by using the word "appears" and that, as a result, Tait & LaPlante is not dispositive on this issue.

In response, the defendant argues that the only change with regard to the common law recognition of the marital privilege against adverse spousal testimony has been made in the criminal context, with the enactment of General Statutes § 54-84a. The defendant further emphasizes that the Connecticut Supreme Court has neither reversed nor overturned the [*4] decision in *Spitz's Appeal, 56 Conn. 184, 14 A. 776 (1888)*, which recognized the marital privilege against adverse spousal testimony.

## CONCLUSION

The court concludes that the common law privilege against adverse spousal testimony is applicable in both criminal and civil cases.

First, that privilege and the rationale for that privilege is part of our common law. In Spitz's Appeal from Commissioners, *Id., 184-86*, when considering a wife's claim, as a creditor, against the insolvent estate of her deceased husband, the Connecticut Supreme Court noted that at common law, the husband or wife of a party is disqualified as a witness and may not testify against his or her spouse. n1 This common law rule is based on the legal unity of the husband and wife and the prevention of marital discord. *Id., 186*. See also *State v. Saia, 172 Conn. 37, 42, 372 A.2d 144 (1976)*; 8 J. Wigmore, Evidence § 2228 (McNaughton rev. 1961). n2 Therefore, "the privilege applies only to those who are husband and wife at the time of the testimony." C. Tait & J. LaPlante, Connecticut Evidence, supra, § 12.3.1.

n1 This common law marital privilege against adverse spousal testimony is distinct from the confidential-communication privilege which requires a communication, made in confidence, from one spouse to another during a period of marriage. See C. Tait & J. LaPlante, Connecticut Evidence § 12.6 (2d Ed. 1988).

[*5]

The Supreme Court did not limit this common law rule to either criminal or civil cases. The Court did,

however, hold that the marital privilege against adverse spousal testimony does not apply to "actions at law in which the husband and wife have conflicting interests and are opposing parties, as petitions for divorce or suits by the wife seeking protection against the husband, and has no application to suits in equity relating to the wife's separate estate." Spitz's Appeal from Commissioners, *supra, 86 Conn. 184;* implicitly recognizing its applicability to civil case. In *State v. Saia, supra, 172 Conn. 42,* the Connecticut Supreme Court again recognized the marital privilege against adverse spousal testimony, stating that "the common-law restriction against adverse marital testimony was founded on the legal unity of the spouses and the policy of preventing discord between them."

n2 Wigmore identifies the two reasons advanced to support the marital privilege against adverse spousal testimony: "the first of these is the argument so often repeated in the more modern opinions (though ranging back also among the oldest of the arguments), namely, the danger of causing dissension and of 'disturbing the peace of families.'" Wigmore rejects this first rationale arguing that "when one thinks of the multifold circumstances of life that contribute to cause marital dissension, the liability to give unfavorable testimony appears as only a casual and minor one, not to be exaggerated into a foundation for so important a rule. It is incorrect to assume that there exists in the normal domestic union an imminent danger of shattering an ideal state of harmony solely by the liability to testify unfavorably."

The second reason "is a natural repugnance in every fair-minded person to compelling a wife or husband to be the means of the other's condemnation, and to compelling the culprit to the humiliation of being condemned by the words of his intimate life partner."

Wigmore summarizes his rejection of the marital privilege against adverse spousal testimony arguing that "this privilege has no longer adequate reason for retention. In an age which has so far rationalized, depolarized and dechivalrized the marital relation and the spirit of femininity as to be willing to enact complete legal and political equality and independence of man and woman, this marital privilege is the merest anachronism in legal theory and an indefensible obstruction to truth in practice."

[*6]

1996 Conn. Super. LEXIS 50, *

Second, the marital privilege has been recognized by our legislative in both criminal and civil matters. Criminally, it has been both codified and excepted as to personal violence in Connecticut General Statutes, Sec. 54-84a. Civilly, it has been recognized by our legislature where its parameters have been circumscribed so as to make it inapplicable in civil support matters and civil child support matters. C.G.S. Sec. 46b 203 and CGS Sec. 17a 101(f).

Third, the ancient roots of the privilege still have recognized vitality legislatively in Connecticut and in today's world despite the assertions of Wigmore that legal and political equality of men and women have made marital privilege an anachronism. Society still recognizes the need for policies that contribute to rather than detract from the marital contract and that recognition is necessary in today's world as it was in the past.

Accordingly, the motion for protective order is granted if properly asserted by the wife.

Barall, J.