# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS C. KINIRY | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | CIVIL ACTION NO. 3:02 CV 01680 (JBA) |
| | : | |
| METRO-NORTH RAILROAD COMPANY | : | |
| | : | |
| | : | |
| Defendant. | : | FEBRUARY 28, 2005 |

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRECLUDE PLAINTIFF'S EXPERT, DR. J. CAMERON KIRCHNER</u>

The undersigned Defendant, Metro-North Railroad Company (hereinafter "Metro-North"), pursuant to Federal Rules of Evidence 104 and 702, moves to preclude the proffered testimony of the plaintiff's purported expert, Dr. J. Cameron Kirchner.

As will be discussed below, Dr. Kirchner failed to follow any rigorous or accepted methodology in forming his opinions. Dr. Kirchner is an ear, nose and throat physician who simply examined the plaintiff once and then rendered a report in which he opines that the plaintiff's alleged hearing loss was caused by his exposure to noise at Metro-North.[1] Discovery shows that Dr. Kirchner employed no scientifically valid methodology in reaching his opinion.

---

[1]See expert disclosure attached as Exhibit A.

Because Dr. Kirchner's opinion that the plaintiff's alleged hearing loss was caused by his exposure to noise at Metro-North is not based on reliable scientific methods, this opinion is unreliable and inadmissible under Federal Rule of Evidence 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993); and Joiner v. General Electric Co., 522 U.S. 136, 118 S.Ct. 512 (1997).

**EXPERT TESTIMONY IS ONLY ADMISSIBLE IF IS COMPORTS WITH THE REQUIREMENTS OF FEDERAL RULE OF EVIDENCE 702 AND DAUBERT.**

FRE 702 states in its entirety:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In addition to the requirements set forth in FRE 702, the United States Supreme Court in Daubert, established guidelines for determining whether expert testimony is admissible. In

- 2 -

<u>Daubert</u>, the Court provided a non-exclusive list to consider in deciding whether expert testimony is sufficiently reliable to be admitted.

> Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test. But some general observations are appropriate.... Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested.... Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication. Additionally, in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation.... Finally, general acceptance can yet have a bearing on the inquiry. A reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community.

<u>Daubert</u>, 509 U.S. at 593-94 (internal quotation marks and citations omitted). <u>Daubert</u> established a general "gatekeeping" function for trial courts. <u>Id.</u> at 597. <u>See also,</u> Federal Rule of Evidence 104 (preliminary questions concerning the qualification of a person to be a witness, or the admissibility of evidence shall be determined by the court). This gatekeeping function has since been extended to apply to all expert testimony: specialized, technical, or scientific. <u>See</u> <u>Kumho Tire v. Carmichael</u>, 526 U.S. 137, 147-48, 119 S.Ct. 1167, (1999). The objective of the

gatekeeping requirement is to ensure the reliability and relevance of expert testimony.  Id. at 152.

 In addition to scrutinizing the methodology of an expert, trial courts must also scrutinize the

conclusions of the expert.  This is because

> . . . conclusions and methodology are not entirely distinct from one
> another.  Trained experts commonly extrapolate from existing data.
> But nothing in either Daubert or the Federal Rules of Evidence
> requires a district court to admit opinion evidence that is connected
> to existing data only by the *ipse dixit* of the expert.  A court may
> conclude that there is simply too great an analytical gap between
> the data and the opinion offered.

Joiner v. General Electric Co., 522 U.S. 136, 146, 118 S.Ct. 512, 519 (1997).

These requirements have been held to apply to physicians rendering opinions in cases

involving alleged occupationally related injuries.  See, Stasior v. National Railroad Passenger

Corporation, 19 F.Supp.2d 835 (N.D. Il. 1998)(carpal tunnel syndrome); Magdaleno v.

Burlington Northern Railroad Co., 5 F.Supp.2d 899 (D.Co. 1998)(cumulative trauma disorder) ;

Dukes v. Illinois Central Railroad Co., 934 F.Supp. 939 (N.D. Il. 1996)(carpal tunnel syndrome);

Bennett et al. v. PRC Public Sector, Inc., et al., 931 F.Supp. 484 (S.D.Tx. 1996)(various

repetitive motion injuries); Eggar v. Burlington Northern Railroad Co., No. CV 89-159-BLG-

JFB, 1991 WL 315487 (D. Mont. 1991)(several alleged illnesses including hearing loss, attached

as Exhibit B).

**DR. KIRCHNER'S OPINION IS INADMISSIBLE UNDER
FRE 702 AND <u>DAUBERT</u> BECAUSE IT IS NOT BASED ON
RELIABLE SCIENTIFIC METHODOLOGY.**

Dr. Kirchner's opinion that the plaintiff's alleged hearing loss was caused by his exposure to noise at Metro-North is unreliable because he has no basis whatsoever to conclude that the plaintiff was exposed to noise in sufficient quantities or at decibel levels which could cause hearing loss. Dr. Kirchner's methodology appears to be an attempt at differential diagnosis.[2] However, this attempt at a differential diagnosis was insufficient for two reasons. First, he failed to do the necessary investigation or analysis to establish Mr. Kiniry's work at Metro-North as a possible cause of his symptoms. Second, he failed to adequately rule out other possible causes.

**<u>Dr. Kirchner failed to do any investigation that would support including the
plaintiff's exposure to noise at Metro-North as a possible cause of the alleged
hearing loss.</u>**

Dr. Kirchner first evaluated the plaintiff on August 27, 2002, almost three years after the plaintiff claims he first had notice of his hearing loss. This evaluation was at the request of the plaintiff's attorney and solely for the purpose of this litigation. Dr. Kirchner did no other

---

[2]A differential diagnosis is the process by which a physician excludes all possible causes of a physical condition until there is only one remaining possible cause. <u>Hardyman v. Norfolk & Western Railway Co.</u>, 243 F.3d 255, (6th Cir. 2001)

investigative work in this matter.  (Kirchner deposition transcript, p. 566-69, attached as Exhibit C.)

On July 10, 2003, Dr. Kirchner sent a letter to plaintiff's attorney stating his opinion that "it is [his] opinion to a reasonable degree of medical certainty that occupational noise has contributed to his hearing loss."  (Dr. Kirchner letter, attached as Exhibit D.)

The sole basis for Dr. Kirchner's opinion that noise at Metro-North caused the plaintiff's alleged hearing loss, other than his basis understanding of noise induced hearing loss, is what the plaintiff told him during his August 27, 2002 evaluation.  (Kirchner deposition transcript, p. 268.)  The plaintiff told Dr. Kirchner that "he has been exposed to the noise of passing trains, relays, and track equipment."  (Dr. Kirchner's evaluation report of Mr. Kiniry, August 27, 2002, attached as Exhibit E.)  Dr. Kirchner did not rely upon any scientific treatises, studies or review of the relevant literature on the issue of occupational noise-induced hearing loss.  He never performed any testing of noise levels at Metro-North; nor has he reviewed or relied upon any such testing.  (Kirchner deposition transcript, p. 267, 567-59.)  He has no idea of what the noise levels were at the plaintiff's work sites (id.); nor does he have any idea as to the duration the plaintiff was exposed to noise.  Id. Dr. Kirchner simply has no basis in fact to conclude that the plaintiff was ever exposed to noise at Metro-North which was sufficient to cause hearing loss.

Dr. Kirchner never studied railroad workers generally and never studied railroad signal maintainers (the plaintiff's craft) specifically.  <u>Id</u>. at pgs. 365-67, 568-69.  Dr. Kirchner has no idea how many hours in a day or week Mr. Kiniry was exposed to noise levels that could cause hearing loss.  In addition, Dr. Kirchner has not performed any noise level testing on the machines/equipment the plaintiff claims he has been exposed to, nor has he seen any such testing results.

At most, Dr. Kirchner understood Mr. Kiniry's job to require him to be exposed to the noise of "passing trains, relays, and track equipment." (Dr. Kirchner's evaluation report, August 27, 2002, p.1.)  Despite an utter lack of familiarity with or measurement of Mr. Kiniry's work requirements, Dr. Kirchner formed the opinion that the work at Metro-North caused Mr. Kiniry's purported conditions.

The closest Dr. Kirchner comes to any basis for opining that noise at Metro-North caused the plaintiff's alleged hearing loss is his statement that "[t]he association between noise exposure and hearing loss has been extensively documented in the medical literature for over fifty years." He continues stating that the railroad had notice of this link, citing a presentation by Dr. Aram Glorig before the Medical and Surgical Officers of the Association of American Railroads. However, Dr. Kirchner testified that he did <u>not</u> rely upon this presentation in making his opinion

and that he was only aware of this presentation because the plaintiff's attorney presented him

with a copy of the discussion.  (Kirchner Deposition Transcript p. 345-46, 448.)

Simply put, Dr. Kirchner has no basis for including noise at Metro-North as a possible

cause of the plaintiff's alleged hearing loss.

**Dr. Kirchner failed to rule out other possible causes of the plaintiff's alleged hearing loss.**

At the August, 2002 meeting, Dr. Kirchner discussed with the plaintiff his medical

history.  At no time did Dr. Kirchner review the plaintiff's medical records from Metro-North, or

any of the plaintiff's treating physicians.  In addition, Dr. Kirchner failed to ascertain what other

activities the plaintiff engages in, past or present, that may have contributed to his hearing loss.

Dr. Kirchner only asked the plaintiff if he used home power tools or rode a motorcycle.  No

further attempt was made to ascertain a detailed medical history on Mr. Kiniry or even to see if

Mr. Kiniry's recollection was accurate.

 As described above and in Hardyman v. Norfolk & Western Railway Co., 243 F.3d 255,

(6th Cir. 2001), differential diagnosis is a method by which a physician considers all possible

causes for a given condition and then eliminates each potential cause until one remains.  Courts,

however, do not unilaterally admit expert testimony on the issue of causation simply because the

plaintiff's proffered expert uses the magic words "differential diagnosis."  The mere use o f the term does not bring an expert's testimony within <u>Daubert</u> requirements.

Courts apply <u>Daubert</u> factors in their determination as to whether an expert is qualified and whether they performed a valid and reliable differential diagnosis.  "To warrant admissibility, it is critical that an expert's analysis be reliable at every step."  <u>Amorgianos v. National Railroad Passenger Corp.</u>, 303 F.3d 256, 267 (2d Cir. 2002).  "When an expert opinion is based on data, methodology, or studies that are simply inadequate to support the conclusions reached, <u>Daubert</u> and Rule 702 mandate the exclusion of that unreliable opinion testimony."  <u>Id.</u> citing <u>Heller v. Shaw Industries, Inc.</u>, 167 F.3d 146, 153 (3d Cir. 1999).  "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."  <u>Id.</u> citing <u>Heller</u>, 167 F.3d at 155.

The doctor in <u>Hardyman</u> used differential diagnosis to arrive at the opinion that the plaintiff's complaints of Carpal Tunnel Syndrome ("CTS") were caused by his work.  The doctor in <u>Hardyman</u> was a specialist in occupational and environmental medicine.  From what is contained in the <u>Hardyman</u> opinion, it is apparent that the doctor first investigated the tasks necessary to perform the plaintiff's job.  The opinion states that the doctor was able identify specific tasks that required intensive hand usage involving forceful use of the hands at extremes

of posture.  The doctor was able to state that the intensive hand use was required repeatedly during the day.  Through his experience in occupational medicine, the doctor was able to determine that the plaintiff's work activities were significantly more hand intensive than other jobs.  In sum, the doctor in <u>Hardyman</u> established that the plaintiff's work activities at the railroad were a potential cause of his CTS by investigating and analyzing the plaintiff's job tasks and responsibilities.  The doctor in <u>Hardyman</u> then eliminated other possible causes for the plaintiff's CTS.  He took an extensive history from the plaintiff which included a history of his non-occupational activities and medical conditions.  Only after establishing that the plaintiff's work was a potential cause of his CTS, and eliminating all other possible causes, did the expert in <u>Hardyman</u> complete a valid differential diagnosis.

Unlike the doctor in <u>Hardyman</u>, Dr. Kirchner did nothing to establish that Mr. Kiniry's work was a potential cause of his complaints.  Dr. Kirchner did no investigation, measuring, quantification of exposure to noise or any other analysis of Mr. Kiniry's work site.  The only thing Dr. Kirchner knew about Mr. Kiniry's work was that it involved some amount of exposure to the noise of passing trains, relays and track equipment.  Based on those facts, the only reasonable conclusion is that Dr. Kirchner assumed that Mr. Kiniry had been exposed to sufficient decibels of noise for a sufficient period of time to cause his complaints.  This is a far

cry from the expert doctor in <u>Hardyman</u> determining that the total of the plaintiff's exposure to various risk factors for CTS amounted to a possible cause for his conditions. Indeed, what Dr. Kirchner did was akin to having assumed that Mr. Kiniry was exposed to a sufficient amount of noise over a sufficient period of time at Metro-North to cause his complaints.  Such assumptions have been rejected by many courts.  <u>Mancuso v. Consolidated Edison Company of N.Y., Inc.</u>, 967 F.Supp. 1437, 1450 (1997)(citing four cases and stating that such reasoning is circular and unacceptable.)

Also, unlike the doctor in <u>Hardyman</u>, Dr. Kirchner failed to eliminate other possible causes for Mr. Kiniry's conditions.  Dr. Kirchner failed to take an extensive history of Mr. Kiniry's non-occupational activities.  Dr. Kirchner stated that the plaintiff did not indicate any hobbies or recreational activities that could have contributed to his present hearing difficulties (Kirchner Deposition Transcript, p. 268).  Dr. Kirchner admits that non-occupational activities have been linked to hearing loss, yet he failed to determine whether any of Mr. Kiniry's leisure activities could have caused his conditions.  Mr. Kiniry testified at his deposition that he has used a snowblower every winter since 1993 without hearing protection, and that he also mows his lawn without using hearing protection.  (Kiniry Deposition Transcript, p. 111, attached as Exhibit F).  In addition, Mr. Kiniry admitted to setting off firecrackers as a child, sometimes setting them

off as close as three feet away from him.  (Kiniry Deposition Transcript, p. 111-12.)  Each of

these activities may lead to high frequency hearing loss.  It appears that Dr. Kirchner never

considered these activities as possible causes.

Generally, under <u>Daubert</u>, "questions relating to the bases and sources of an expert's

opinion affect the weight of the opinion, not the admissibility of the opinion." <u>Eggar</u>, 1991 WL

315487 at *3 <u>citing</u> <u>Viterbo v. Dow Chem. Co.</u>, 826 F.2d 420 (5th Cir. 1987).  "However, in

certain cases the basis of the expert's opinion is of such 'little weight' that it would not assist a

jury in reaching a sound verdict and should be excluded." <u>Id.</u>  In <u>Eggar</u>, the court excluded the

plaintiff's expert witnesses where, among other things, the experts failed to review the plaintiff's

employment and medical records, despite the fact that such records had been collected by the

parties.  <u>See</u> <u>id.</u> at *9.  The court noted that had the expert "reviewed the plaintiffs' outside

records, he too would have found that other factors could be responsible for some of plaintiffs'

conditions." <u>Id.</u> at *10.  The court also found persuasive that the plaintiff's experts never

considered or reviewed the measurements taken of the plaintiffs' work environment that

allegedly caused their occupational injuries.  "The doctors must do more than support their

opinions with the fact that plaintiffs worked around various chemicals and now suffer from a

variety of injuries, illnesses and conditions." <u>Id.</u>   The court concluded that the plaintiff's experts

opinions were "inadmissable because their opinions simply lack the foundation and reliability necessary to support expert testimony." Id. at *11.

Dr. Kirchner did not review any scientific literature supporting his conclusion, he did not perform any measurements or tests to ascertain whether the noise the plaintiff claims he is exposed to at Metro-North could actually cause the high frequency hearing loss, he did not visit the plaintiff at work and observe him performing his tasks in order to determine what noise he was actually exposed to, nor did he perform a thorough review of the plaintiff's medical history or question him about his non-occupational activities. However, based on one visit with the plaintiff,[3] he opined that the noise that Mr. Kiniry is exposed to at Metro-North contributed to his hearing loss. Therefore, Dr. Kirchner's testimony should be excluded as insufficient under Daubert.

---

[3]     Mr. Kiniry did see Dr. Kirchner a second time on January 18, 2005. Dr. Kirchner's opinion in this matter did not change (Kirchner Deposition Transcript, p. 316).

THE DEFENDANT,
METRO-NORTH RAILROAD COMPANY


By:_____
        Robert O. Hickey, Esq., (CT 19555)
        Ryan, Ryan, Johnson & Deluca, LLP
        80 Fourth Street, P.O. Box 3057
        Stamford, CT   06905
        Phone No. 203-357-9200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2005, a copy of the above was hand delivered and e-mailed to the following counsel and pro se parties of record:

Scott Perry, Esq.
Cahill, Goetsch & Maurer, PC
43 Trumbull Street
New Haven, CT 06511-1059
Attorney for Plaintiff, Thomas C. Kiniry

_____
Robert O. Hickey, Esq.

I:\Procases\205.131\memolawmtnpreclude.wpd
205.131

- 15 -